The **AETNA CASUALTY AND SURETY COMPANY, Plaintiff-Appellee,**

v.

**SERVICE CONTRACTING, INC.,**
**Defendant-Appellant.**

No. 73-2076.

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1973.

John J. Weigel, New Orleans, La., for defendant-appellant.

Melvin W. Mathes, New Orleans, La., for plaintiff-appellee.

Before TUTTLE, GEWIN and RONEY, Circuit Judges.

PER CURIAM:

The judgment of the trial court is affirmed. We consider that the Reasons for Judgment announced by that court in support of its judgment clearly and accurately present the matter. We therefore append a copy to this opinion.

*Appendix*

REASONS FOR JUDGMENT

Aetna Casualty and Surety Company issued several policies of insurance to Service Contracting, Inc. covering the period May 1, 1964 to May 1, 1970. At issue in this case were premiums on two policies in effect from May 1, 1964 to May 1, 1967: A Workmen's Compensation and Employers' Liability Policy, No. 39C–24856–SR and a Comprehensive General Liability Policy, No. 39AL–7079–SR.

Both of these policies provided for premiums to be computed in accordance with a retrospective premium plan, Plan D. That is, a retrospective premium was computed on the actual losses and expenses incurred under the policies as well as on reserves for possible future losses and expenses. However, payments in excess of $10,000 per claim did not increase the retrospective premium.

As of the sixth interim or fourth full retrospective rating under Plan D, Service Contracting owed Aetna a total retrospective premium of $39,158.00. Plaintiff's Exhibit No. 8 demonstrates that this total included reserves for the claims of Lowery and Huff. But by the time of the next rating, as shown in Plaintiff's Exhibit No. 9, these two claims had been settled, thus establishing the actual losses and expenses incurred. The retrospective premium was thereby reduced in the amount of $4,-888.00, leaving a total of $34,270.00 due Aetna from Service Contracting, Inc.

Of this $34,270.00 Service Contracting disputes only certain charges attributable to the disposition of two claims, the claims of Pat Laster and Archie Dantin.

█ As set out in plaintiff's Exhibit No. 10, Pat Laster, an employee of Service Contracting, Inc., sued Texaco, Inc. for injuries received while working on one of its stationary platforms located in the Gulf of Mexico. Texaco filed a third-party complaint against Service Contracting, the indemnitor under a hold-harmless agreement made in Texaco's favor. Ultimately, Aetna paid $5,100.00 in indemnity to Pat Laster and incurred $5,637.58 in attorney's fees and costs for a total of $10,737.58.

Aetna handled this claim under the comprehensive liability policy. As applied to this policy, the retrospective premium plan included attorneys' fees and costs. Therefore, Service Contracting was charged with $4900 of the total attorneys' fees and costs which, together with the $5100 indemnity payment, amounted to the maximum allowable retrospective premium of $10,000 for a single claim.

Service Contracting objects to being charged anything for attorneys' fees and costs. They contend that this claim should have been handled under Coverage B of the workmen's compensation policy which specifically excluded attorneys' fees and costs from the computation of any retrospective premium. Their reasoning is that the hold-harmless agreement added nothing to their obligations to Texaco which did not already exist in the absence of such a written contract. But this ignores the fact that, having paid workmen's compensation to Laster in accordance with the exclusive liability provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., Service Contracting was not subject to any independent tort liability to its employees. Without this underlying tort liability, Service Contracting could

not have been liable for indemnity in the absence of a written contract. Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc., 377 F. 2d 511 (5th Cir.), cert. denied, 389 U.S. 849 [88 S.Ct. 102, 19 L.Ed.2d 118] (1967). *See* General Electric Co. v. Cuban American Nickel Co., 396 F.2d 89 (5th Cir. 1968); Halliburton Co. v. Norton Drilling Co., 302 F.2d 431 (5th Cir. 1962).

Furthermore, since the Laster claim did not arise from an accident on a vessel, the *Ryan* doctrine of implied warranty does not apply. Loffland Brothers Co. v. Roberts, 386 F.2d 540 (5th Cir. 1967), cert. denied, 389 U.S. 1040 [88 S.Ct. 778, 19 L.Ed.2d 830] (1968); Ocean Drilling & Exploration Co. v. Berry Brothers Oil Field Service, Inc., *supra*.

Therefore, the hold-harmless agreement provided the sole basis for the indemnification of Texaco by Service Contracting. Contractual liability such as this was specifically excluded from the workmen's compensation policy, but was explicitly provided for in the comprehensive liability policy. Thus, Aetna quite correctly handled the Laster claim under the comprehensive liability policy which resulted in charging attorneys fees and costs as part of the retrospective premium.

The second disputed claim arises from the pre-trial settlement of Archie Dantin's suit against Service Contracting. Aetna settled the matter at a total cost, including attorneys' fees, of $20,931.54. The maximum retrospective premium of $10,000 was charged to Service Contracting.

Service Contracting admits liability for attorneys' fees and costs of $3,431.54 but objects to the remaining $6,568.46 as part of an improperly paid settlement. Service Contracting contends that it should have been afforded the option of assuming the defense of the Dantin case and holding Aetna harmless for any liability. Service contends that it would have had such an option be-

cause, prior to the inception of the policies issued by Aetna to Service Contracting, Aetna had verbally agreed to discuss with Service Contracting the settlement of any claims over $1,000.00, but did not in fact discuss the Dantin settlement.

While Aetna had verbally agreed to discuss any settlements exceeding $1,000.00, Aetna nevertheless retained the sole right and authority to settle any case it deemed expedient. There was no evidence introduced to prove that, if Aetna had discussed the settlement, either Service Contracting or Aetna would have been willing to enter into such a hold-harmless agreement. And in view of the $300,000 in coverage that Service Contracting had with Aetna, it is extremely unlikely that Service Contracting would have released this coverage in hopes of saving a mere $6,568.46.

Moreover, the Louisiana Direct Action Statute, La.R.S. 22:655, giving an injured party a separate right against the insurer, leaves serious doubt as to whether any such hold-harmless agreement could have effectively released the insurer. *See* Finn v. Employers' Liability Assurance Corp., 141 So.2d 852 (La. App.2d Cir. 1962).

The attorney who represented Aetna and Service Contracting in the defense of the Dantin claim stated that a settlement of $7,000–$8,000 would have been reasonable. Service Contracting failed to present any evidence to prove that, if it had assumed the defense of the case, it would have saved the $6,568.46 which is contested. Hence, even if Service Contracting had had the right to assume the defense—which right it did not have. —it has failed to establish that it suffered any loss.

Consequently, Aetna properly charged Service Contracting with the basic amounts in dispute, $4,900 for the Laster claim and $6,568.46 for the Dantin claim. In addition, there is a charge for retrospective factors of 17.76% computed on each of these figures, amounting to $870.00 and $1,166.00 respectively,

for a total of $13,504.45, which is contested by Service Contracting. Together with the amount not in controversy, $20-765.54, Service Contracting, Inc. owes Aetna Casualty & Surety Company $34,-270.00.