James T. OMAN, Fred R. Walker, Hugh V. Reynolds, and Willie A. Gibbsons

v.

JOHNS–MANVILLE CORP., Owens-Corning Fiberglas Corp., Pittsburgh Corning Corp., and H. K. Porter Co., Inc.

v.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY.

Civ. A. Nos. 76–178–NN, 77–97–NN.

United States District Court,
E. D. Virginia,
Newport News Division.

Jan. 11, 1980.

Robert R. Hatten, Patten & Wornom, Newport News, Va., Richard S. Glasser, Glasser & Glasser, Norfolk, Va., Gene Locks, Greitzer & Locks, Philadelphia, Pa., for plaintiffs.

Glen Huff and Robert M. Hughes, III, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for Johns-Manville Corp.

Jack Greer, Williams, Worrell, Kelly & Greer, Norfolk, Va., for Owens-Corning Fiberglas Corp.

Worth D. Banner, White, Reynolds, Smith & Winters, Norfolk, Va., for Pittsburgh Corning Corp.

Archibald Wallace, III, Sands, Anderson, Marks & Miller, Richmond, Va., for H. K. Porter Co.

Stephen B. Clarkson, Sullivan, Beauregard, Clarkson, Moss, Brown & Johnson, Washington, D. C., Shannon T. Mason, Jr., Mason, Gibson, Cowardin & Spencer, Newport News, Va., Antje E. Huck, Legal and Corporate News Shipbuilding, Newport News, Va., for third-party defendant, Newport News Shipbuilding and Dry Dock Co.

## MEMORANDUM OPINION

CLARKE, District Judge.

The plaintiffs in these consolidated actions are present and former employees of the third-party defendant, Newport News Shipbuilding and Dry Dock Co. During the course of their employment at the Shipyard, where they engaged in the trade of pipe covering in various ships and workshops, the plaintiffs were exposed to dust from asbestos products manufactured by the defendants. They allege that, as a result of these asbestos exposures during the time period relevant in these actions, they developed asbestosis or added to their existing asbestosis condition.

There is no dispute that the Shipyard is an employer subject to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–50, or that it has paid and continues to pay compensation to the plaintiffs on account of their asbestos-related injuries. The LHWCA is the plaintiffs' exclusive remedy against their employer, the Shipyard. 33 U.S.C. § 905(a). However, section 33(a) of that Act, 33 U.S.C. § 933(a), authorizes suits by injured employees against third-parties, such as the defendants in this case. *See American Stevedores v. Porello*, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947). Accordingly, the plaintiffs brought this action against these manufacturers, alleging that their injuries were proximately caused by the manufacturers' negligent failure to warn them adequately of the hazards of asbestos, and a related breach of the manufacturers' implied warranty of the safe and merchantable condition of their products.

While the defendants deny any negligence or breach of warranty on their part, they have asserted a third-party indemnity claim against the Shipyard, alleging that any negligence on the part of the manufacturers was merely "secondary" or "passive" in contrast with the Shipyard's "primary" or "active" negligence in failing to secure a safe workplace for the plaintiffs. They also allege that the Shipyard breached an implied warranty to the manufacturers, arising from their vendor-vendee relationship, that the Shipyard would use due care in the handling of these asbestos products. This breach of warranty, the manufacturers claim, requires that the Shipyard indemnify the manufacturers for any judgment against them in favor of the plaintiffs, or in the alternative, that the Shipyard pay contribution to the manufacturers.

The Shipyard has responded to the manufacturers' third-party complaint with a motion for summary judgment, contending that the manufacturers' claims against it are unsupported by the applicable law, and that the LHWCA, especially the exclusivity provision of section 5 of that Act,[1] bars any recovery for contribution.

■ While the manufacturers predicate their claims for indemnity or contribution on both tort and contract theories, their contract-based claims are without merit. The manufacturers do not rely upon any express contract of indemnity or contribution. Rather, they argue that as a purchaser of products manufactured by the defendants, the Shipyard impliedly warranted that it would use due care in the handling and use of the products and would use these products in a manner contemplated and intended by the defendants.

The Shipyard breached this warranty, the manufacturers maintain, by failing to instruct its employees in the proper use of asbestos products. It is therefore required, the argument continues, to indemnify, or pay contribution to, these manufacturers for any liability which they may be found to have to the plaintiffs.

The short answer to this reverse-warranty argument is that it distorts the concept of implied warranty "out of all relation to reality." *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714 (2d Cir. 1978), *quoting*: 2A Larson, *Workmen's Compensation* Law 324, 402 (1976). Under Virginia law, which this Court has previously determined to be controlling in these cases, no such warranty from the purchaser to the seller arises from the statutory provisions governing sales, which recognize only certain implied warranties running from the seller to the buyer, and not the reverse. *See* Code of Virginia §§ 8.2–314, 8.2–315. Nor does any duty of care on the part of the purchaser, such as that suggested by the manufacturers, arise from the vendor-vendee relationship itself. *See Jennings v. Franz Torwegge Mach. Wks.*, 347 F.Supp. 1288, 1289 (W.D.Va.1972). *See also White v. Texas E. Trans. Corp.*, 512 F.2d 486, 488 n. 5 (5th Cir. 1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976), in which the Fifth Circuit rejected a similar indemnity claim brought by a manufacturer of equipment against a purchaser-employer, based upon the purchaser's alleged implied warranty that it would use the product only in accordance with the manufacturer's specifications and recommendations.

Moreover, the consumer-protection purpose of the developing implied warranty doctrine is not furthered by the reverse warranty proposed by the defendants. Although manufacturers and merchants are entitled to protection against liability where an injury results from a purchaser's misuse of a product, this shield cannot be transformed into a sword to impose affirmative liability on the purchaser.

■ The manufacturers also contend that the Shipyard is bound to indemnify them as third-party beneficiaries to the contract between the Shipyard and its employees, such as the plaintiffs, which requires the Shipyard to exercise due care in handling materials, and to furnish its employees with a reasonably safe place in which to work. To profit from this third-party beneficiary theory, however, Virginia law requires the third party to show that the primary parties

1. 33 U.S.C. § 905(a), as amended, provides: The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and *anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death*, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

to the contract clearly and definitely intended to confer a benefit upon him. *See Professional Realty Corp. v. Bender*, 216 Va. 737, 222 S.E.2d 810, 812 (1976). It is insufficient for the third party to show that he would benefit from the contract incidentally. *In re County Green Ltd. Partnership*, 438 F.Supp. 693, 698 (W.D.Va.1977); *Valley Landscape Co. v. Rolland*, 218 Va. 257, 237 S.E.2d 120 (1977).

■ The manufacturers point to no express contractual language or other agreement which would make them a party to the employment contract between the Shipyard and its employees, and the law will not create such a contractual benefit where it does not exist. *See Valley Landscape Co. v. Rolland, supra*, at 122. Therefore, the Shipyard does not owe the manufacturers indemnity or contribution as an incident of its contractual duties to its employees. *See also Groover v. Magnavox Co.*, 71 F.R.D. 638 (W.D.Pa.1976) (No right of indemnity or contribution accrued to television manufacturer against landlord out of the contractual relation between plaintiff-tenant; manufacturer not within class of parties intended to be protected by implied warranty of habitability).

Shorn of these untenable contractual bases, the manufacturers' claims for indemnity or contribution rely solely upon tort-based theories which permit one whose negligence was merely secondary or passive to shift the full burden of liability to another who was primarily or actively negligent. We are faced, therefore, with the question whether the exclusivity provision of the LHWCA bars recovery of delictual indemnity or contribution based on this doctrine.

To support their claims, the manufacturers rely upon a line of cases recognizing contract-based indemnity, which was spawned by the Supreme Court's decision in *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Co.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In *Ryan*, a longshoreman employed by Ryan Stevedoring Co. was injured when a roll of paper, improperly stowed aboard a vessel owned by Pan-Atlantic, broke loose and struck him. The roll had been stowed aboard the vessel by another of Ryan's employees at a different port. When the shipowner was sued by the employee for negligence and the vessel's unseaworthiness, it brought a third-party action against Ryan for indemnity, based not upon any contractual obligation, but on a common-law duty to indemnify under the circumstances of that case.

The Court, however, did not reach this issue, noting that the shipowner's action was "not founded upon a tort or upon any duty which the stevedoring contractor [owed] to its employee[s]," but rather was "grounded upon the contractor's breach of its purely consensual obligation owing to the shipowner to stow the cargo in a reasonably safe manner." 350 U.S. at 131–32, 76 S.Ct. at 236. With four members of the Court dissenting,[2] the Court held that the LHWCA's exclusivity provision did not bar an action for indemnity based upon a stevedore's implied contractual obligation to stow cargo properly and safely, which the Court characterized as "the essence of [Ryan's] stevedoring contract . . . comparable to a manufacturer's warranty of the soundness of its manufactured product." 350 U.S. at 133–34, 76 S.Ct. at 237.

The dissenting Justices urged that this implied warranty, and its attendant obligation to indemnify the third-party, was nothing but a thinly disguised, tort-based, common-law theory of indemnity. These Justices read the exclusivity provision of section 5 of the LHWCA to be a complete bar to any such action against the employer:

I recognize that common-law indemnity may sometimes arise where two people commit a tort or wrong which hurts the same person. As between wrongdoers the courts will under some circumstances impose the total liability on the "primary" or "active" wrongdoer, apparently meaning the wrongdoer the court deems to be the most negligent. But indemnity

---

2. Justice Black wrote a dissenting opinion in which Chief Justice Warren, Justice Douglas and Justice Clark concurred. 350 U.S. at 135, 76 S.Ct. 232.

so imposed is plainly "on account of" the negligence of the wrongdoer or his employees. The Act expressly forbids such a recovery by "anyone" from a stevedoring company "on account" of an injury to one of its longshoremen. Plainly, common-law indemnity should not be used to fasten such a liability on a stevedoring company. I suppose it is for this reason that the Court purports to find an actual contract to indemnify and thus decides the case on an issue neither presented in the complaint nor considered by the trial court.

350 U.S. at 141–42, 76 S.Ct. at 241–242 (Black, J., dissenting).

While *Ryan* and its progeny recognize a third-party's right to indemnity when the claim rests upon a contractual undertaking, whether express or implied, these cases provide no support for the manufacturer's claims in the cases at bar. Having rejected their contractual theories, we are confronted with only common-law claims for indemnity or contribution, similar to those sidestepped in *Ryan*. Moreover, it is clear that Congress intended to overrule *Ryan* when it amended section 5 of the LHWCA in 1972 to shield shipowners from liability based upon the warranty of seaworthiness, a strict liability theory, and voiding any agreement on the part of the employer to indemnify or pay contribution to the vessel for damages paid by the vessel to the employee. *See* H.R.Rep.No.92–1441, at 4–8 (1972); S.Rep.No.92–1125, at 8–12 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698; *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 113 n.6, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974).

The manufacturers also seek comfort in the Fourth Circuit's decision in *Wallenius Bremen G. m. b. h. v. United States*, 409 F.2d 994 (4th Cir. 1969), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970), which held that the exclusive remedy provision of the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 757(b) [3] did not bar the claim of a third party for indemnity against the Federal Government.

In *Bremen*, an inspector employed by the United States Department of Agriculture was injured when he fell off an accommodation ladder between the dock and a ship owned by Wallenius Bremen. Bremen settled an action brought against it by the injured employee, and then brought suit against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 *et seq.*, and the Suits in Admiralty Act, 46 U.S.C. § 741 *et seq.*, seeking indemnity for the amount paid to the employee in settlement, plus attorney's fees and expenses. As in this case, the third party's claim for indemnity rested upon the tort doctrine of primary and secondary liability.

Holding that the FECA was not a bar to such an action for indemnity, the Fourth Circuit noted that indemnity had been permitted in *Ryan Stevedoring Co. v. Pan-Atlantic SS Corp., supra*, under the LHWCA, and in *Weyerhaeuser SS Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), which held that the FECA did not bar application of the long-standing admiralty rule of divided damages in collision cases.

The Fourth Circuit rejected the Ninth Circuit's position, expressed in *Wien Alaska Airlines, Inc. v. United States*, 375 F.2d 736 (9th Cir.), *cert. denied*, 389 U.S. 940, 88 S.Ct. 288, 19 L.Ed.2d 291 (1967); and *United Air Lines v. Wiener*, 335 F.2d 379 (9th Cir. 1964), *cert. denied*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), that the exclusive remedy provision indirectly barred indemnity because, in the absence of the in-

---

**3.** 5 U.S.C. § 757(b) provided in pertinent part that:

[t]he liability of the United States or any of its instrumentalities * * * with respect to the injury or death of an employee shall be exclusive, and in place, of all other liability of the United States or such instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and anyone otherwise entitled to recover damages from the United States or such instrumentality, on account of such injury or death . . . ..

With minor amendments to this language, this section is currently codified. at 5 U.S.C. § 8116(c).

demnitor's liability to the injured party, there can be no recovery for indemnity. 409 F.2d at 997. The right to tort-based indemnity, the Fourth Circuit explained, rests not upon the existence of *liability* to the injured party, but upon the *duty* owed by the indemnitor to that party:

> But we are unable to see why in addition to breach of duty there must be indemnitor's *liability* to the injured party. If the purpose of indemnity is to relieve the relatively innocent wrongdoer and shift the burden to one whose conduct is more blameworthy, the fact that the latter has a personal defense if sued by the injured person would seem to be irrelevant.

> \*    \*    \*    \*    \*    \*

> As for the law of indemnity we think the better rule is that which rests the right of indemnity upon violation of a duty of care to the injured person rather than upon tort "liability."

409 F.2d at 998.

While *Bremen* touches upon related issues, it is not controlling in this case. Superficially, *Bremen* may be distinguished as a case construing the FECA and not the LHWCA, which is the governing statute in this case. The court in that case focused upon the isolated language of the exclusivity provision of the relevant Act, and did not consider, as we must, whether common-law indemnity claims may be inconsistent with the purpose of the compensation scheme as a whole. Moreover, *Bremen* stands opposed to the decisions in all other circuits which have considered the issue. *See Kudelka v. American Hoist & Derrick Co.*, 541 F.2d 651, 659 (7th Cir. 1976), and cases cited therein; *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714 (2d Cir. 1978); *White v. Texas E. Trans. Corp.*, 512 F.2d 486 (5th Cir. 1975), *cert. denied, Bettis Corp. et al. v. Charles Wheatley Co.*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976); *Aetna Casualty & Surety Co. v. Service Contracting, Inc.*, 490 F.2d 299 (5th Cir. 1973). *See also Travelers Ins. Co. v. United States*, 493 F.2d 881 (3d Cir. 1974) (criticizing the position taken in *Bremen* ).

Additionally, the authorities relied upon in *Bremen* either are inapposite in this case, or have been eroded by congressional action. For example, as noted above, Congress eliminated the indemnity exception carved out in *Ryan Stevedoring Co.* when it amended the LHWCA in 1972. The court also relied heavily upon language in the Supreme Court's decision in *Weyerhaeuser S.S. Co. v. United States, supra,* permitting noncontractual indemnity under the FECA in the absence of evidence of congressional concern with the rights of unrelated third parties:

> The legislative history of the Federal Employees' Compensation Act, originally passed in 1916, shows that the concern of Congress was to provide federal employees a swift, economical, and assured right of compensation for injuries arising out of the employment relationship, regardless of the negligence of the employee or his fellow servants, or the lack of fault on the part of the United States. The purpose of § 7(b), added in 1949, was to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. *There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases.*

372 U.S. at 601, 83 S.Ct. at 928–929 (footnote omitted) (emphasis supplied).

However, the Supreme Court has reached a contrary conclusion under the LHWCA, holding that in the absence of specific congressional action, courts should not extend common-law rules of contribution which potentially may interfere with the compensation scheme established by the LHWCA. *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).[4] Noting that courts

---

4. In *Halcyon Lines*, a shipowner had hired Haenn to make repairs on Halcyon's ship,

which was moored in navigable waters. An employee of Haenn was injured while making

generally cannot on their own initiative create an enforceable right of contribution between joint tort-feasors, the Court held that joint tort-feasor contribution under the LHWCA, at least in suits in admiralty, should await congressional action:

> We have concluded that it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action. Congress has already enacted much legislation in the area of maritime personal injuries. For example, under the Harbor Workers' Act Congress has made fault unimportant in determining the employer's responsibility to his employee; Congress has made further inroads on traditional court law by abolition of the defenses of contributory negligence and assumption of risk and by the creation of a statutory schedule of compensation. The Harbor Workers' Act in turn must be integrated with other acts such as the Jones Act, 41 Stat. 1007, 46 U.S.C. § 688 [46 U.S.C.A. § 688], the Public Vessels Act, 43 Stat. 1112, 46 U.S.C. §§ 781–790 [46 U.S.C.A. § 781–790], the Limited Liability Act, R.S. § 4281, as amended, 46 U.S.C. § 181 *et seq.* [46 U.S.C.A. § 181 et seq.] and the Harter Act 27 Stat. 445, 46 U.S.C. §§ 190–195 [46 U.S.C.A. §§ 190–195]. Many groups of persons with varying interests are vitally concerned with the proper functioning and administration of all these Acts as an integrated whole. We think that legislative consideration and action can best bring about a fair accommodation of the diverse but related interests of these groups. The legislative process is peculiarly adapted to determine which of the many possible solutions to this problem would be most beneficial in the long run.

342 U.S. at 285–86, 72 S.Ct. at 280 (footnote omitted).

The Supreme Court has recently reaffirmed its holding in the *Halcyon* case. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974); *Atlantic Coast Line R.R. v. Erie Lackawanna R.R.*, 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972) (per curiam). In *Cooper Stevedoring*, the Court summarized its earlier holding in *Halcyon* :

> The Court . . . took cognizance of the apparent trade-off in the Act between the employer's limitation of liability and the abrogation, in favor of the employee, of common-law doctrines of contributory negligence and assumption of risk. *Id.* [342 U.S.], at 285–286 [72 S.Ct. 277, at 279–280]. Confronted with the possibility that any workable rule of contribution might be inconsistent with the balance struck by Congress in the Harbor Workers' Act between the interests of carriers, employers, employees, and their respective insurers, we refrained from allowing contribution in the circumstances of that case.

These factors underlying our decision in *Halcyon* still have much force. Indeed, the 1972 amendments to the Harbor Workers' Act re-emphasize Congress' determination that as between an employer and its injured employee, the right to compensation under the Act should be the employee's exclusive remedy.[6]

[6] Under the 1972 amendments, an employee injured on a vessel can bring an action against the vessel for negligence, but the vessel's liability will not be based upon the warranty of

---

these repairs. The injured employee brought an action against the shipowner, Halcyon, alleging that his injuries had been caused by Halcyon's negligence and the unseaworthiness of the vessel. Halcyon brought Haenn in as a third-party defendant on the ground that Haenn's negligence had contributed to the injuries. The district court entered judgment in accordance with the divided-damages rule of admiralty, which requires mutual wrongdoers to share equally the damages sustained by each, as well as personal injuries or property damage inflicted on innocent third parties.

Haenn urged to the Supreme Court that the LHWCA precluded any third party from recovering contribution from an employer covered by that Act, such as Haenn, where the claim for contribution rested upon the joint negligence of the employer and the third party. The Court, however, did not reach this issue. 342 U.S. at 286 n.12, 72 S.Ct. 277.

seaworthiness or breach thereof. And where the vessel has been held liable for negligence "the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b) (1970 ed., Supp. II). The intent and effect of this amendment was to overrule this Court's decisions in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946), and *Ryan Stevedoring Co. Pan-Atlantic S.S. Corp.*, 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956), insofar as they made an employer circuitously liable for injuries to its employee, by allowing the employee to maintain an action for unseaworthiness against the vessel and allowing the vessel to maintain an action for indemnity against the employer. See H.R.Rep.No.92–1441, pp. 4–8 (1972); S.Rep.No.92–115, pp. 8–12 (1972).

417 U.S. at 112–13, 94 S.Ct. at 2178 & n.6.[5]

▮ In addition, the Fourth Circuit's careful distinction in *Bremen* between duty and liability for purposes of indemnity is inapplicable in this case, which is governed by Virginia law and not admiralty law, upon which the court apparently relied in *Bremen*.[6] See *Glover v. Johns-Manville Corp.*, Nos. 78–648–N & 77–1–N (E.D.Va. Dec. 21, 1979). Under Virginia law, the right to non-contractual indemnity arises only when the party from whom liability is sought may be held liable in tort to the original plaintiff. See *Glover v. Johns-Manville Corp.*, supra; *Jennings v. Franz Torwegge Mach. Wks.*, 347 F.Supp. 1288 (W.D.Va.1972); *Drumgoole v. Virginia Elec. & Power Co.*, 170 F.Supp. 824 (E.D.Va. 1959). See also *Norfolk Southern R.R. v. Gretakis*, 162 Va. 597, 174 S.E. 841 (1934). Similarly, contribution between joint tortfeasors is not available under Virginia law if the injured person did not have an en-

forceable cause of action against the party from whom contribution is sought. *Tucker v. Dayton Elec. Mfg. Co.*, No. 77–200–N (E.D.Va. Jan. 26, 1978); *Norfolk Southern R.R. v. Gretakis, supra* ; 4B *Michie's Jurisprudence* § 22, at 214.[7]

In short, the court in *Bremen*, confronted with the issue of indemnity under the FECA, relied upon principles which have been rejected by the Supreme Court when considering the imposition of third-party liability under the LHWCA. Moreover, it reached a conclusion which is contrary to the result dictated by the state law applicable in this case. We therefore conclude that the *Bremen* decision does not govern our determination of the issue presented in this case.

Courts in other jurisdictions which have considered the issue generally have held that the exclusive remedy provision of the LHWCA bars recovery of delictual indemnity or contribution. See, e. g., *Guidry v. South Louisiana Contractors, Inc.*, 444 F.Supp. 850 (W.D.La.1977); *Spadola v. Viking Yacht Co.*, 441 F.Supp. 798 (S.D.N.Y. 1977); *St. Julien v. Diamond M Drilling*, 403 F.Supp. 1256 (E.D.La.1975); *Santoy v. Shell Oil Co.*, 386 F.Supp. 905 (E.D.La.1974); *Turner v. Excavation Const., Inc.*, 324 F.Supp. 704 (D.C.D.C.1971).

In *Galimi v. Jetco, Inc.*, 514 F.2d 949 (2d Cir. 1975), the Second Circuit reviewed the Supreme Court's LHWCA decisions in *Cooper Stevedoring Co. v. Kopke, Inc., supra* ; and *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., supra*, to construe a similar exclusive remedy provision of the FECA as

---

5. See also *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), in which the Court held that, to reduce a judgment against a third party to an employee by the amount of compensation paid to the employee by the employer, and thereby to frustrate the employer's right to recoup his compensation payments, would constitute contribution precluded by the holding in *Halcyon*. *Id.* at 412, 74 S.Ct. 202.

6. Precisely this point distinguishes our decision in *Cargill v. United States*, 1977 A.M.C. 50 (E.D.Va.1976), which followed *Bremen's* reliance on maritime law in deciding the indemnity issue under the LHWCA.

7. This rule alone might be sufficient to dispose of the manufacturers' claims in these cases. See *Glover v. Johns-Manville Corp., supra.* However, this Court, like many other courts around the country, has been inundated with asbestos-related claims, involving indemnity or contribution claims similar to those asserted in these cases. These claims often are governed by the LHWCA or similar Federal compensation schemes. Because of the importance of determining the effect of these schemes upon these ubiquitous indemnity claims, we chose to rest our decision upon this question.

a bar to a third party's claim for indemnity. The court in *Galimi* quoted the following language from *Cooper Stevedoring*, referring to the Supreme Court's earlier decision in *Atlantic Coast Line R.R. v. Erie Lackawanna R.R.*, 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972):

> Erie, against whom contribution was sought, was the plaintiff's employer, and in *Pennsylvania R. Co. v. O'Rourke*, 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1953), we recognized that a railroad employee injured while working on a freight car situated on a carfloat in navigable waters was subject exclusively to the Harbor Workers' Act. Erie was therefore entitled to the limitation of liability protections of the Harbor Workers' Act, just like the employer in *Halcyon*. . . . [E]ven if Erie were negligent, its injured employee was entitled to claim compensation from it under the Harbor Workers' Act, and Erie was accordingly entitled to the protective mantle of the Act's limitation of liability provisions.

The court then concluded that:

> Implicit in this passage is the judgment that exclusive remedy provisions such as that in the original Longshoreman's and Harbor Workers' Act and the one before this court shield an employer from a third-party suit for contribution. It thus appears that the analysis applied by the majority of circuits which have considered the question would most probably be adopted by the Supreme Court were the issue presented directly to it.

514 F.2d at 955–56.

The Second Circuit expressly extended this bar to non-contractual indemnity claims arising under the LHWCA in *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714 (2d Cir. 1978), in which it held that such tort-based claims clearly would be "on account of" the employee's injury, and therefore barred by the exclusive remedy provision of section 5 of the LHWCA. That Circuit's rule that the LHWCA bars recovery of tort-based contribution was also reconfirmed. 579 F.2d at 719.

The indemnity issue before us presents a now classic conflict between the exclusive remedy provisions of workmen's compensation laws, which are designed to compensate injured employees expeditiously and to stabilize employer liability, and the fair-apportionment doctrines governing third-party claims for indemnification and contribution. As noted by the Second Circuit, "[w]hen an employee covered by workmen's compensation sues in negligence a third party who then impleads the employer, there is no way to satisfy all policies coming into play." *Galimi v. Jetco, Inc., supra*, 514 F.2d at 952.

In establishing a priority among these conflicting policies, we are guided by the fundamental purposes of the LHWCA, the first of which is to assure that prompt aid reaches the injured employee when his need is greatest, without jeopardizing his right to recover damages from a third party responsible for his injury. *American Stevedores, Inc. v. Porello*, 330 U.S. 446, 456, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); *Louviere v. Shell Oil Co.*, 509 F.2d 278, 283 (5th Cir. 1975), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976); *Smiley v. American Export Lines, Inc.*, No. 79–243–N (E.D.Va. August 28, 1979). To achieve this purpose, the Act requires employers to provide this compensation at the earliest possible date, without regard to the employer's fault, and without the delay inherent in the formal adjudication of claims. *See Liberty Mut. Ins. Co. v. Ameta & Co.*, 564 F.2d 1097, 1103 (4th Cir. 1977); *Louviere v. Shell Oil Co., supra*, 509 F.2d at 283.

■ In exchange for the absolute liability which the Act imposes upon him, the employer's liability for damages "on account of" the injury is strictly limited to the statutory compensation and benefits. 33 U.S.C. § 905. This limitation on the employer's liability is designed to husband the employer's resources, or its insurer's resources, for payment of benefits under the Act. *Cf. Cella v. Partenreederei Ms Ravenna*, 529 F.2d 15, 20 (1st Cir. 1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976). This limitation assures that adequate funds may be reserved or

acquired by the employer to pay the statutory compensation to eligible employees without delay. This exclusivity provision, like all other aspects of the Act, should be liberally construed to further its humanitarian purpose. *Pillsbury v. United Engineering Co.*, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225 (1952); *Old Dominion Stevedoring Corp. v. O'Hearne*, 218 F.2d 651 (4th Cir. 1955).

■ By accepting compensation under the Act, an employee does not forfeit any rights he may have against a negligent third party. An injured employee who initiates suit within six months of his acceptance of compensation under an award may bring an action against any third party responsible for his injuries other than a fellow employee. The payment of compensation benefits by the employer, together with the deputy commissioner's acceptance and filing of the usual notice forms required of the employer under the Act, constitutes "compensation under an award" within the meaning of section 33(b). *Liberty Mut. Ins. Co. v. Ameta & Co., supra*, 564 F.2d at 1103; *Larson v. Associated Container Transp.*, 459 F.Supp. 561, 564 (E.D.Va. 1978). Moreover, the six-month period referred to in that section begins to run at the commencement and acceptance of such compensation payments. *Larson v. Associated Container Transp., supra.* If an employee fails to bring such an action within six months of such acceptance of compensation, all of his rights to recover damages against such third persons are automatically assigned to the employer. 33 U.S.C. § 933(b).

In the event that an employer receives a statutory assignment of the employee's claims, section 33(e) of the Act provides that the employer shall pay to the employee any amounts recovered by the employer from a third party in excess of:

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);

(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

(C) all amounts paid as compensation;

(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative . . . .

33 U.S.C. § 933(e).

The purpose of these provisions of the Act, permitting suit against a responsible third party by the injured employee or his employer, is evident. The Act establishes a system to provide an injured employee with immediate medical and compensation benefits without forfeiting his rights to pursue any third party liable for his injuries. Congress recognized the importance of the employee's right to recover damages from a third party to fully compensate him for his injuries when it amended section 33 of the Act in 1959 to provide for the six-month period prior to the automatic assignment of such claims to the employer. *See* [1959] U.S.Code Cong. & Admin.News, p. 2134.

At the same time, however, the Act protects the employer's interests in recovering all amounts paid, or to be paid, as compensation or benefits by giving the employee "a sufficient but limited period in which to determine whether he desires personally to pursue a third party for recovery. Since the only right actually being assigned is the right to control the litigation against a third party . . . the system offers an accommodation of the interests of both the injured [employee] and his employer." *Larson v. Associated Container Transp., supra*, 459 F.Supp. at 564. Moreover, in addition

to his right to reimbursement of compensation and benefits, section 33(e)(2) of the Act gives the employer a one-fifth share in the net recovery as an incentive to pursue the claim vigorously to protect the interests of the employee as much as possible. [1959] U.S.Code Cong. & Admin.News, at p. 2135.

However, the claims asserted by the manufacturers conflict with this scheme. To begin with, the effect of permitting the indemnity or contribution sought in this case is to impose upon the employer indirectly precisely the liability which the employee may not directly enforce. Such liability clearly would be "on account of" the injury. The third party becomes only a conduit through which the employee may obtain from his employer amounts in excess of the employer's exclusive statutory liability. *See Zapico v. Bucyrus-Erie Co., supra* 579 F.2d at 720.

The manufacturers' claims, however, pose even more subtle dangers to the LHWCA compensation scheme. Facing the potential of ultimate liability for the employee's injuries if an action is brought against a third party, the employer's natural incentive is to discourage the bringing of any such action or to hinder its success. The Act's assignment procedure provides the employer with a degree of influence over the outcome of such actions which is wholly inconsistent with this motive. This assignment scheme provides the employer with primary control over third-party claims unless the employee brings such an action within the six months immediately following his acceptance of compensation, a time during which the employee is perhaps least able to evaluate his alternatives.

█ Vested with control over this right, the employer might attempt to avoid the risk of ultimate liability by failing to bring such an action. This strategy will not necessarily insulate the employer from liability; where the employee establishes a conflict of interest and inaction by the assignee-employer, the employee retains the right to proceed against the third-party tort-feasor beyond the six-month period. *Czaplicki v. The Hoegh Silvercloud*, 351 U.S. 525, 76

S.Ct. 946, 100 L.Ed. 1387 (1956); *Bandy v. Bank Line Ltd.* 442 F.Supp. 882, 886 (E.D. Va.1977). However, the burden is upon the employee to establish the conflict of interest by proof of particular facts. *Bandy v. Bank Line Ltd., supra*, at 886. In cases such as the present ones, this may call for a judgment on the part of the plaintiff as to the employer's potential liability for indemnity or contribution, and the burden of collecting and presenting evidence of the employer's determination not to prosecute the assigned action to avoid ultimate liability. The burden thereby imposed upon the employee, as well as the lengthy delay, may well discourage employees from pursuing their rights against culpable third parties, and present an additional obstacle to those who do attempt to exercise their rights.

In the event that the employer brings an action against the third party, or enters into a compromise, he cannot be expected to pursue the claim with the enthusiasm contemplated in the Act if he risks the danger of final liability through indemnity or contribution. Even where unfounded, a third party's threat to seek indemnity against the employer is likely to be sufficient to chill the employer's efforts to pursue the claim. Additionally, if the third party's common law indemnity or contribution claim is litigated together with the assigned claim against the third party, as is likely, the amount of the judgment will undoubtedly be influenced by evidence of the employer's negligence. Since any amount in excess of the employer's compensation and benefit payments, costs, and one-fifth interest is to be paid to the injured employee, it is the employee who suffers the real loss of this diminished judgment. This scenario obviously conflicts with the Act's purpose to provide the employee with a meaningful right to recover damages from a negligent third party.

This danger was apparent to the dissenting Justices in *Ryan Co. v. Pan-Atlantic Corp., supra*:

[W]hile Congress imposed absolute liability on employers, they were also accorded counterbalancing advantages. They were

no longer to be subjected to the hazards of large tort verdicts. Under no circumstances were they to be held liable to their own employees for more than the compensation clearly fixed in the Act. Thus employers were given every reason to believe they could buy their insurance and make other business arrangements on the basis of the limited Compensation Act liability. More than that, § 33 of the Act also provides that for compensation paid an employee an employer shall himself be reimbursed or indemnified out of any money collected as a result of an employee's claim for negligent injury by a third person. But the end result here is that this employer is actually mulcted in damages because its employee successfully prosecuted a third-party action. Liability is thus imposed because of the negligence of the employer's other employees. This the Act forbids. Whether called "common-law indemnity," "contribution," "subrogation," or any other name, the result is precisely the same. The employer has to pay more "on account of" an injury to his employee than Congress said he should.

350 U.S. at 140–41, 76 S.Ct. at 241.

Moreover, although the 1972 amendments to the LHWCA, which prohibit shipowners from recovering indemnity from stevedore-employers, did not expressly extend to all third-party indemnity or contribution claims, they clearly illustrate that Congress foresaw these hazards in the circularity engendered by allowing such recovery. *See Spadola v. Viking Yacht Co.*, 441 F.Supp. 798, 801 (S.D.N.Y.1977), *quoting Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759, 767 (E.D.Pa.1974). *See also Edmonds v. Compagnie Generale Transatlantique*, 558 F.2d 186, 191 (4th Cir. 1977), *rev'd on other grounds*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979) ("It was the intent of the 1972 amendments to eliminate this circuitous system of litigation and to restore to the stevedore the exclusivity of liability for compensation payments under the statute only."); *S. S. Seatrain Louisiana v. California Stevedore & Ballast Co.*, 424 F.Supp. 180, 184 (N.D.Cal.1976) ("Congress specifi-

cally intended to cut off circuitous indemnity litigation and to make the compensation payments under the Act the exclusive liability of the employer."). Nor does it matter, for purposes of this issue, that the third party is made to bear the whole of the liability though its negligence may have been only a minor cause of the injury. Even if the employer's fault may have been greater, the Act evidences Congress' determination to limit its liability while permitting the employee, whether directly or through an action brought by his employer, to recover the full amount of his damages from a responsible third party. *Cf. Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 2761, 61 L.Ed.2d 521 (1979).

It also conflicts with the employer's right, under section 33 of the Act, to recoup the amount paid in compensation and benefits. This right to recoupment cannot be defeated by the third party on the theory of the employer's concurrent negligence. *Albert v. Paulo*, 552 F.2d 1139, 1140 (5th Cir. 1977); *Landon v. Lief Hoegh & Co.*, 521 F.2d 756, 760–61 n.3 (2d Cir. 1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976). However, to permit indemnification based on the employer's negligence would have precisely this effect. The Act clearly does not give the employer the right to recoup his compensation payments from the third party, which right is not effected by the employer's negligence, only to permit the third party to recover this amount back again in an indemnity action on the basis of the employer's negligence.

■ We conclude that these policy considerations underly the various aspects of the compensation scheme established by the LHWCA, and militate decisively against imposing indemnity or contribution in these cases. Moreover, we are persuaded that the Supreme Court's expressions in *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., supra; Atlantic Coast Line R.R. v. Erie Lackawanna R.R., supra*; and *Cooper Stevedoring Co. v. Fritz Kopke, Inc., supra*, provide substantial support for our conclu-

sion that the exclusive remedy provision of the LHWCA, and the scheme created by that Act as a whole, precludes third parties such as the manufacturers in these cases from recovering indemnity or contribution from the employer where their claims rest upon common law rather than contract. For these reasons, we GRANTED the Shipyard's motion for summary judgment at the close of the plaintiff's evidence at trial on December 7, 1979.