William B. GLOVER, Weeks Smith, William L. Bazemore, Plaintiffs,

v.

JOHNS–MANVILLE CORPORATION, a Delaware Corporation; Johns-Manville Sales Corporation, successor by merger with Johns-Manville Products Corporation, a Delaware Corporation; Unarco Industries, Inc., formerly known as Union Asbestos and Rubber Company, a Delaware Corporation; H. K. Porter Company, Inc., Thermoid Division, a Delaware Corporation; Southern Textile Company, a Delaware Corporation; Raybestos-Manhattan, Inc., a Connecticut Corporation; Owens-Corning Fiberglas Corporation, a Delaware Corporation, the Celotex Corporation, a Delaware Corporation, Appellants,

and

PITTSBURGH CORNING CORPORATION, a Delaware Corporation; J. P. Stevens & Company, Inc., a Delaware Corporation; Eagle-Picher Industries, Inc., an Ohio Corporation; Amatex Corporation, a Pennsylvania Corporation, GAF Corporation, a Delaware Corporation, Defendants and Third Party Plaintiffs,

v.

UNITED STATES of America, Appellee.

No. 80–1085.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1980.

Decided Oct. 5, 1981.

C. Michael Montgomery, Norfolk, Va. (Steven G. Schwartz, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for Johns-Manville Corp. and Johns-Manville Sales Corp.

Philip Payne, Newport News, Va. (Hoyle, Corbett, Hubbard, Smith & Payne, Newport News, Va., Pitney, Hardin & Kipp, Morristown, N.J., on brief), for Raybestos-Manhattan, Inc.

Gerard E. W. Voyer, Taylor, Walker & Adams, Norfolk, Va., on brief for Unarco Industries, Inc.

Archibald Wallace, III, Albert D. Bugg, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., on brief for H. K. Porter Co., Inc. and Southern Textile Company.

Jack E. Greer, Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief for Owens-Corning Fiberglas Corp.

John Y. Pearson, Jr., Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief for Celotex Corp.

Joseph B. Cox, Jr., Chapel Hill, N.C. (Alice Daniel, Asst. Atty. Gen., Washington, D.C., Justin W. Williams, U.S. Atty., Alexandria, Va., Neil R. Peterson, Civ. Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before WIDENER, HALL and PHILLIPS, Circuit Judges.

WIDENER, Circuit Judge:

The appeal at hand arises from an action for indemnity brought against the United States by the Johns-Manville Corporation and fourteen other manufacturers of asbestos-based insulation products (the manufacturers). The district court dismissed the two contractual counts of the manufacturers' complaint for lack of subject matter jurisdiction, and, after a full trial, held as a matter of both law and fact that the manufacturers were not entitled to recover on their remaining claim for noncontractual indemnity.[1] We affirm the decision on noncontractual indemnity, but vacate and remand the decision on the contractual claims.

This controversy traces its origins to an action instituted by William Glover against the manufacturers in the United States District Court for the Eastern District of Virginia. Glover, a civilian, was employed from 1940 until his retirement in 1975 by the Norfolk Naval Shipyard, a facility owned and operated by the United States. His retirement was precipitated by the onset of the industrial disease of asbestosis, which Glover claimed to have contracted as a result of his job related handling of and exposure to the asbestos-based insulation materials produced and sold by the manufacturers.

After successfully asserting a claim against the United States for workmen's compensation benefits under the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8101 et seq., Glover initiated an action against the manufacturers. His claim for relief was based upon the principles of negligence, implied warranty, strict liability, and fraudulently misrepresenting and withholding information about the product.[2]

Prior to settlement, however, the manufacturers filed the instant third party action against the United States for indemnity should they be found liable to Glover in the principal case. As amended, their complaint alleged subject matter jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., or, in the

---

1. A fourth count, premised upon the United States' alleged breach of certain of its public health responsibilities, was withdrawn by the manufacturers before trial.

2. By order of the district court, Glover's action was consolidated with numerous similar actions then before the court for the purpose of discovery and for the resolution of certain common pretrial motions.

alternative, under the general admiralty and maritime law of the United States, 28 U.S.C. § 1333, the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., and the Public Vessels Act, 46 U.S.C. § 781 et seq. It also asserted that the district court had pendent and ancillary jurisdiction over the indemnity action. By its prior order in the consolidated proceeding, the district court had denied the presence of all admiralty and related statutory jurisdiction; therefore, this case proceeded as one under the Tort Claims Act.

The third party complaint asserted that the United States was liable to the manufacturers on the theories of noncontractual indemnity as between active and passive tort-feasors, breach of an implied warranty, and the United States' alleged breach of its employment contract with Glover, with respect to which the manufacturers claimed to be third party beneficiaries. On the motion of the United States, the district court dismissed the latter two contractual counts for lack of jurisdiction. Thus, only the noncontractual indemnity claim remained to be tried.

At trial the United States relied upon the defense that its sole liability for injury to one of its employees arose under the FECA. Because it had paid, and apparently continued to pay, such compensation to Glover, the United States contended that § 8116(c) of the FECA precluded further recovery against it by the manufacturers. 5 U.S.C. § 8116(c). The manufacturers, on the other hand, asserted that the exclusive remedy provision of § 8116(c) did not apply to bar claims of third parties such as themselves, who are unrelated to the injured party, under the doctrine announced in *Wallenius Bremen G.m.b.H. v. United States*, 409 F.2d 994 (4th Cir. 1969), cert. denied, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970).

The district court noted that, while, pursuant to *Bremen*, the claim of the manufacturers might not be directly barred by the exclusive remedy provisions of the FECA,

the Act did bar any action by Glover against the United States. Applying Virginia law,[3] the court held that the action for noncontractual indemnity would not lie because the indemnitor and the indemnitee were not jointly liable to the injured party. Furthermore, the court held that even if such a defense were unavailing, the claim failed on its merits because the manufacturers' negligence was active rather than passive.

The manufacturers appeal from these holdings on various grounds. As to the district court's denial of recovery under the noncontractual indemnity claim, they assert that it was error to apply the law of Virginia in limitation of the FECA, and that the court further erred in finding the manufacturers' fault to have been active rather than passive. The manufacturers also appeal from the dismissal for lack of jurisdiction of the two contractual indemnity counts.

We address ourselves first to the issues surrounding the noncontractual indemnity claim. The parties have expended a large portion of their arguments on appeal on the question of the propriety of the rule, set forth in *Bremen*, that third parties unrelated to an injured employee are beyond the scope of the FECA exclusivity clause. For the purpose of this opinion, we will assume without deciding that § 8116(c) of the FECA is inapplicable to this action, and only comment that there is no merit to the United States' contention that *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), upon which *Bremen* relied, was overruled by *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).

Many of the remaining issues presented with respect to the noncontractual indemnity claim are largely settled by our opinion in the companion case of *White v. Johns-Manville Corporation*, 662 F.2d 243 (4th Cir. 1981) (hereinafter *White I*). As in the present case, the original plaintiffs

---

**3.** The district court was proceeding under the theory that the manufacturers' noncontractual indemnity claim arose only under the Tort

Claims Act. Therefore, it looked to the law of Virginia as the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

in *White* were shipyard workers who filed suit against the manufacturers after contracting asbestosis. Their action was based upon the manufacturers' alleged breach of a duty to warn and of an implied warranty, and upon the manufacturers' strict liability for their asbestos-based products. The manufacturers filed a third party action seeking indemnity from the plaintiffs' employer, the Newport News Shipyard, alleging, *inter alia*, that the manufacturers' fault was merely passive while that of the employer was active in nature. The district court granted Newport News' motion to dismiss the indemnity claims.

We note that we hold, in *White v. Johns-Manville Corporation*, 662 F.2d 234, Nos. 79–1854, 80–1028/1140/1154/1227/1228 (4th Cir. 1981) (*White II*), that the manufacturers' noncontractual indemnity claim was derived from a maritime tort action and thus was subject to analysis under the federal maritime law. That law in *White I* was found to provide noncontractual indemnity in favor of a wrongdoer only where the indemnitee's liability is merely passive; such as constructive, vicarious or derivative, while the indemnitor's liability is active, flowing directly from its own act or omission. Because the liability for which the manufacturers sought to be indemnified could only arise from the allegations of the original complaint against them, and because that complaint alleged only active conduct, we held that noncontractual indemnity was unavailable as a matter of law.

■ That reasoning is equally applicable here.[4] Glover's original complaint asserted that the manufacturers were liable for their negligent failure to warn of the dangers inherent in the use of their asbestos-based products; for their alleged breach of an implied warranty that such products were reasonably fit for their intended use; in strict liability, for the sale of an unreasonably dangerous product; and for their allegedly fraudulent misrepresentations as to the safety with which their products could be used. The first three of these causes of action we hold to be active in nature in *White I*. It is also clear that the charge of fraudulent misrepresentation is an allegation of active conduct, for it seeks to impose liability upon the manufacturers as a direct result of an act on their part. Thus, because the complaint upon which the manufacturers' original liability is premised alleges only active conduct, their claim for noncontractual indemnity fails as a matter of law.[5] Accord *Halliburton Company v. Norton Drilling Company*, 302 F.2d 431 (5th Cir. 1962); opinion on rehearing, 313 F.2d 380 (5th Cir. 1963), cert. denied, 374 U.S. 829, 83 S.Ct. 1870, 10 L.Ed.2d 1052 (1963).

■ The factual findings of the district court also support this result. In order to be eligible for indemnity, a party must

---

**4.** In *White v. Johns-Manville Corporation*, 662 F.2d 234 (4th Cir. 1981) (*White II*), we hold that admiralty jurisdiction was present only after finding that the actionable conduct both occurred on navigable waters and lands adjacent thereto and that it bore a significant relation to traditional maritime activity. See *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). While the conduct in the present case may be related in the same way the conduct in *White* was related to maritime activity, there has been no concurrent finding of its situs. Therefore, it remains uncertain whether this claim is properly cognizable in admiralty or under the Tort Claims Act. *Holland v. Sea-Land Service, Inc.*, 655 F.2d 556 (4th Cir. 1981). We need not decide this question, however, for, although § 1346(b) of the Tort Claims Act mandates the application of

the substantive "law of the place of the act or omission," the law of Virginia is similar to the maritime law applied in *White*, supra. See *Sykes v. Stone & Webster Engineering Corporation*, 186 Va. 116, 41 S.E.2d 469, 475–76 (1947); *McLaughlin v. Siegel*, 166 Va. 374, 185 S.E. 873, 874 (1936); *Jennings v. Franz Torwegge Machine Works*, 347 F.Supp. 1288 (W.D. Va.1972); *Drumgoole v. Virginia Electric Power Company*, 170 F.Supp. 824 (E.D.Va.1959).

**5.** This result is even less problematic here than it is in *White I* because the settlement of Glover's claim in the instant case has foreclosed the possibility that proof which might have been subsequently offered at the trial of the underlying action would provide the basis for a finding of only passive actionable conduct on the part of the manufacturers.

demonstrate that it was under some compulsion to satisfy the claim of the original plaintiff. *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir. 1973), cert. denied, *sub nom. Home Indemnity Company v. Ruppel*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). Because the manufacturers here settled with Glover only after the United States declined to participate in the settlement negotiations, that burden could be satisfied by a showing of the manufacturers' potential liability to Glover and of the reasonableness of the settlement. *Parfait v. Jahncke Service, Inc.*, supra, 484 F.2d at 303–5.

The district court found that the manufacturers were, in fact, potentially liable to Glover for their failure to warn him of the dangers inherent in the use of their products. The manufacturers do not contest this finding. Indeed, they must rely upon it, for it forms a necessary element of their claim for indemnity. By their reliance upon this finding, however, the manufacturers necessarily embrace its implications. The finding of the district court not only established the fact of the manufacturers' potential liability to Glover, it also fixed the nature of it. We hold in *White I* that a party liable to the original plaintiff for the breach of a duty to warn is guilty of active fault sufficient to defeat its claim for noncontractual indemnity. Because the liability of the manufacturers is premised upon a finding of such fault, their action for noncontractual indemnity must fail on its merits.

In defense of their position, the manufacturers argue that our decisions in *Brown v. General Motors Corporation*, 355 F.2d 814 (4th Cir. 1965), cert. denied, 386 U.S. 1036, 87 S.Ct. 1474, 18 L.Ed.2d 600 (1967), and *Marshall v. H. K. Ferguson Company*, 623 F.2d 882 (4th Cir. 1980), indicate that the manufacturer of a product is not under a duty to warn a purchaser's employee under all circumstances. If the thrust of this argument is that the manufacturers in this case were under no duty to warn Glover, it

is unavailing. While such a defense might have been asserted in the original action, giving it validity here would deny the basic premise of a noncontractual indemnity action: that the would-be indemnitee is liable, if only passively, to the original plaintiff. *White I*, supra. On the other hand, if the argument is that these cases imply some distinction in the degrees of fault as between a manufacturer and its sophisticated industrial purchaser, and that this distinction is relevant to the characterization of the parties' faults as active or passive, the contention is equally without merit in light of our statement in *White I* that it is the nature, not the degree, of the fault that distinguishes active from passive negligence. We thus hold that the district court properly denied the manufacturers' claim for noncontractual indemnity.

We turn now to the claim that the district court erred in dismissing the manufacturers' claims for contractual indemnity for lack of subject matter jurisdiction. The amended third party complaint based those claims upon either the district court's jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, or its admiralty jurisdiction pursuant to 28 U.S.C. § 1333, the Suits in Admiralty Act, 46 U.S.C. §§ 741 et seq., and the Public Vessels Act, 46 U.S.C. §§ 781 et seq. Having previously concluded that admiralty jurisdiction did not attach, the court held that the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, was the sole basis upon which such contractual claims could be asserted against the United States, and noted that § 1346(a)(2) of the Act limited its jurisdiction to claims not exceeding $10,000.00 in amount. Because the manufacturers sought indemnity for the full amount of their $69,000.00 settlement with Glover, the court dismissed these claims, holding that the amount in controversy was $69,000.00 and that this sum invested the Court of Claims with the sole jurisdiction over them, 28 U.S.C. § 1491.

The manufacturers filed a motion for reconsideration of that dismissal accompanied

by affidavits from each manufacturer stating that the claim of no third party plaintiff exceeded the $10,000.00 limit and that each appellant here made no claim in excess of that amount. The court apparently never ruled upon this motion, but subsequently dismissed the manufacturers' action without further discussion of the contractual claims. On appeal, the manufacturers assert that the district court improperly aggregated their claims in arriving at the conclusion that such claims exceeded the jurisdictional limit set by the Tucker Act. We agree.

■ It is clear that in a class action with diversity jurisdiction upon separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate. *Zahn v. International Paper Company*, 414 U.S. 291, 293–96, 94 S.Ct. 505, 507–09, 38 L.Ed.2d 511 (1973); *Snyder v. Harris*, 394 U.S. 332, 335–42, 89 S.Ct. 1053, 1056–59, 22 L.Ed.2d 319 (1969). See also *Scott v. Frazier*, 253 U.S. 243, 244, 40 S.Ct. 503, 64 L.Ed. 883 (1920), for federal question jurisdiction. Aggregation is permitted, however, where "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder v. Harris*, supra, 394 U.S. at 335, 89 S.Ct. at 1056, quoting *Troy Bank v. Whitehead & Company*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911).

These standards have been applied to actions under the Tucker Act in which multiple plaintiffs, each having a claim of less than $10,000.00 but an aggregate claim in excess of that amount, have sought adjudication of their claims in the district court. In *March v. United States*, 506 F.2d 1306, 1309, n. 1 (D.C.Cir.1974), the court held that jurisdiction properly lay in the district court

under the Tucker Act where some 19,500 plaintiffs with individual claims of less than $10,000.00 filed a class action against the United States. The court stated that "jurisdiction turns, not upon the aggregate amount of the claims of the members of the class, but upon the amounts claimed individually by those members." *Id.* Accord *Brown v. United States*, 365 F.Supp. 328, 338, n. 5 (E.D.Pa.1973), *aff'd in part and rev'd in part on other grounds*, 508 F.2d 618 (3d Cir. 1974), cert. denied, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975); *Northern Natural Gas Company v. Grounds*, 292 F.Supp. 619, 644 (D.Kan.1968), *aff'd in part and rev'd in part on other grounds*, 441 F.2d 704 (10th Cir.), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971).

■ We think this same rule applies here although there is no class action. If aggregation is not permitted among members of a class, certainly it should not otherwise be, other things being equal. The manufacturers' claims, while common in the sense that they appear to arise under similar circumstances, fail to have the undivided interest that is a necessary predicate to aggregation. See *Aetna Insurance Company v. Chicago, Rock Island & Pacific Railroad Company*, 229 F.2d 584, 586 (10th Cir. 1956). Neither is there a single title or right, rather the claim of each manufacturer to indemnity is its alleged contract with the government.[6] The interest of each manufacturer flows from its claimed independent contractual relationship with the United States. Although such claims may be subject to joinder pursuant to Rule 20 of the Federal Rules of Civil Procedure, they are deemed separate and distinct for purposes of determining the amount in controversy. See, e. g., *Oliver v. Alexander*, 31 U.S. (6 Pet.) 143, 145–48, 8 L.Ed. 349 (1832). Therefore, the amount in controversy in this case

---

**6.** The instant case is distinguishable from the situation presented in *Manufacturers Casualty Insurance Company v. Coker*, 219 F.2d 631 (4th Cir. 1955). In *Coker* we permitted the plaintiff, an insurance company seeking declaratory relief, to aggregate the claims of numerous defendants where those parties' claims arose under a single policy of insurance and exceeded the policy's monetary value. The present case does not involve the insufficiency of the fund from which recovery may be had that proved controlling in *Coker*.

must be determined on the basis of each manufacturer's claim.

Upon the manufacturers' motion for reconsideration, the district court had before it the affidavit of each manufacturer stating that the amount of its individual claim did not exceed the $10,000.00 ceiling. Nothing to the contrary appearing in the record, these affidavits may only be construed as good faith statements of the amount of each manufacturer's individual claim. In the presence of such uncontroverted evidence, the district court erred in holding that the manufacturers' contractual claims were aggregated in an amount such as to deprive it of jurisdiction. We therefore vacate the order of the district court dismissing these claims for want of jurisdiction.

■ This disposition does not, however, compel the conclusion that the manufacturers' contractual claims are cognizable under the Tucker Act. That act grants the district court authority concurrent with that of the Court of Claims and does not provide a jurisdictional basis for any claim that could not be maintained in the Court of Claims. *Richardson v. Morris*, 409 U.S. 464, 466, 93 S.Ct. 629, 631, 34 L.Ed.2d 647 (1973); *United States v. Sherwood*, 312 U.S. 584, 591, 61 S.Ct. 767, 772, 85 L.Ed. 1055 (1941). Because the Court of Claims is without jurisdiction over cases arising under the Suits in Admiralty Act, *Matson Navigation Company v. United States*, 284 U.S. 352, 356–59, 52 S.Ct. 162, 164–66, 76 L.Ed. 336 (1932),[7] the district court may not hear such cases pursuant to the Tucker Act although it may under the Suits in Admiralty Act.[8]

■ During its consideration of this case, the district court relied upon its earlier finding that admiralty jurisdiction did not attach in any of the consolidated proceedings. That decision has been reversed in *White II*. While *White II* concerned maritime injuries under the doctrine of *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), and not with the similar, yet conceptually distinct question of admiralty jurisdiction over a maritime contract,[9] the reversal of the district court decision raises at least arguable likelihood that the manufacturers' contractual claims might be properly cognizable under the Suits in Admiralty Act[10] or even the Public Vessels Act, although nothing shown until this time indicates any jurisdiction under that last named statute. The existence of 46 U.S.C. § 741 et seq., jurisdiction, of course, would defeat

**7.** We note that in *Amell v. United States*, 384 U.S. 158, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966), the Court "... held that wage claims ... by Government employees working aboard Government vessels are still cognizable exclusively in the Court of Claims, ...." *United States v. United Continental Tuna*, 425 U.S. 164, 179, n. 18, 96 S.Ct. 1319, 1328, n. 18, 47 L.Ed.2d 653 (1976). *Amell* did not announce as a general rule that the district courts and the Court of Claims have concurrent jurisdiction over Suits in Admiralty Act cases, nor does it provide a similar exception to the *Matson* doctrine applicable to the case at hand. *Amell* rather is the exception, while *Matson* and *United Continental Tuna* state the rule.

**8.** The jurisdiction of the district courts over actions involving maritime contracts pursuant to the Suits in Admiralty Act is said to exist at the expense of the jurisdictional grants of the Tucker Act. *United States v. United Continental Tuna*, 425 U.S. 164, 172–79, 96 S.Ct. 1319, 1324–28, 47 L.Ed.2d 653 (1976).

**9.** See *Kossick v. United Fruit Company*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *Sanderlin v. Old Dominion Stevedoring Corporation*, 385 F.2d 79, 81 (4th Cir. 1967); *Ford Motor Company v. Wallenius Lines, M/V Atlantic Cinderella*, 476 F.Supp. 1362, 1365 (E.D.Va.1979).

**10.** That the instant action is not facially directed against any vessel or cargo of the United States would not defeat that district court's exercise of jurisdiction under the Suits in Admiralty Act, should such jurisdiction be otherwise proper. "... 46 U.S.C. § 742 was amended in 1960 to subject the United States to libels in personam, not just when a government vessel or cargo was involved but in every situation in which, if a private person were involved, a proceeding in admiralty could be maintained." *Lane v. United States*, 529 F.2d 175, 179 (4th Cir. 1975). But see *Amell*, note 6, supra, for wage claims of employees on board government vessels.

the assertion of jurisdiction under the Tucker Act. If admiralty jurisdiction exists, the trial of the manufacturers' contractual claims may proceed as a case involving a maritime contract. If, on the other hand, the facts are insufficient to support the existence of admiralty jurisdiction, there remains no other impediment to the exercise of jurisdiction under the Tucker Act which has been called to our attention. Regardless of which route is taken, the district court apparently will have jurisdiction over these claims. Upon remand that court shall determine which jurisdictional ground, if any, properly underlies the manufacturers' contractual claims and proceed with the case on that basis.

In summary, we affirm the judgment of the district court that, as a matter of both law and fact, the noncontractual indemnity claims advanced by the manufacturers are without merit. On the issue of the district court's jurisdiction over the manufacturers' contractual claims, we vacate the order dismissing those claims for lack of jurisdiction and remand that portion of the case to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

K. K. HALL, Circuit Judge, concurring:

I agree that the manufacturers' active negligence precludes their recovery for noncontractual indemnity. However, I am troubled by the fact that this Circuit permits a tortfeasor to seek indemnity from the United States despite the exclusive remedy clause of the Federal Employees' Compensation Act, 5 U.S.C. § 8116(c). As noted by Judge Widener, our court adopted this position in *Wallenius Bremen G.m.b.H. v. United States*, 409 F.2d 994 (4th Cir. 1969); that decision is binding precedent for the Circuit. Nevertheless, *Bremen* is wrong because it misinterpreted the authorities upon which it relied, and because it failed to recognize the importance of exclusivity provisions to workmen's compensation programs. *Bremen's* faulty analysis has been criticized and rejected by the other circuits,[1] leaving our court with the dubious distinction of being the sole adherent to the *Bremen* rule.

The panel opinion does not squarely confront the problems created by *Bremen*, but instead assumes that Section 8116(c) would not bar the indemnity claims. This assumption is, of course, simply an implied application of the *Bremen* doctrine. Rather than rest upon implications, I would prefer to directly confront and explore this issue, and to seek an *en banc* reconsideration of the *Bremen* analysis.

---

1. The circuits which have rejected the analysis used in *Bremen* are, in order of circuit: *Newport Air Park, Inc. v. United States*, 419 F.2d 342 (1st Cir. 1969); *Galimi v. Jetco, Inc.*, 514 F.2d 949 (2d Cir. 1975); *Travelers Insurance Co. v. United States*, 493 F.2d 881 (3rd Cir. 1974); *Kudelka v. American Hoist and Derrick Co.*, 541 F.2d 651 (7th Cir. 1976); *Adams v. General Dynamics Corp.*, 535 F.2d 489 (9th Cir. 1976); *Murray v. United States*, 132 U.S.App. D.C. 91, 405 F.2d 1361 (1968).