John W. WHITE, Ronald M. Cash, Donahue Ellis, Willie A. Gibbons, Thomas J. Hogge, Maurice W. Holloway, Wilon W. Jones, Percy C. Overman, Hugh V. Reynolds, John Lee Roland, Thomas R. Sawyer, Milton L. Stacey, Robert L. Van Dyke, Walter J. White, James T. Long, Homer E. Watson, O. W. Patrick, James T. Oman, Fred R. Walker, Roscoe C. McGuire, Elias James Watkins, Plaintiffs,

v.

JOHNS–MANVILLE CORPORATION and Johns-Manville Sales Corporation, successor by merger with Johns-Manville Products Corporation; Owens-Corning Fiberglas Corporation, successor by purchase of Kaylo Division of Owens-Illinois Glass Company; Pittsburgh Corning Corporation, a Pennsylvania Corporation; H. K. Porter Thermoid Division, a Delaware Corporation, Appellants,

and

RAYBESTOS–MANHATTEN CORPORATION, a Connecticut Corporation; The Celotex Corporation, successor by merger with Panacon Corporation, which was successor by merger of Briggs Manufacturing Company and Philip Carey Corporation; Unarco Industries, Inc., formerly known as Union Asbestos and Rubber Company; Southern Asbestos Company, a Foreign Corporation; Eagle-Picher Industries Inc., an Ohio Corporation, Defendants and Third Party Plaintiffs,

v.

NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY, Appellee,

and

The United States of America, Third Party Defendant.

John W. WHITE, Ronald M. Cash, Donahue Ellis, Willie A. Gibbons, Thomas J. Hogge, Maurice W. Holloway, Wilon W. Jones, Percy C. Overman, Hugh V. Reynolds, John Lee Roland, Thomas R. Sawyer, Milton L. Stacey, Robert L. Van Dyke, Walter J. White, James T. Long, Homer E. Watson, O. W. Patrick, James T. Oman, Fred R. Walker, Roscoe C. McGuire, Elias James Watkins, Plaintiffs,

v.

UNARCO INDUSTRIES, formerly known as Union Asbestos and Rubber Company; Raybestos-Manhatten, Inc., a Connecticut Corporation, Appellants,

and

JOHNS–MANVILLE CORPORATION and Johns-Manville Sales Corporation, successor by merger with Johns-Manville Products Corporation; Owens-Corning Fiberglas Corporation, successor by purchase of Kaylo Division of Owens-Illinois Glass Company; Pittsburgh Corning Corporation, a Pennsylvania Corporation; The Celotex Corporation, successor by merger with Panacon Corporation, which was successor by merger of Briggs Manufacturing Company, and Philip Carey Corporation; H. K. Porter Company, Thermoid Division, a Delaware Corporation; Southern Asbestos Company, a Foreign Corporation; Eagle-Picher Industries, Inc., an Ohio Corporation, Defendants and Third Party Plaintiffs,

v.

NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY, Appellee,

and

United States of America, Third Party Defendant.

John W. WHITE, Ronald M. Cash, Donahue Ellis, Willie A. Gibbons, Thomas J. Hogge, Maurice W. Holloway, Wilon W. Jones, Percy C. Overman, Hugh V. Reynolds, John Lee Roland, Thomas R. Sawyer, Milton L. Stacey, Robert L. Van Dyke, Walter J. White, James T. Long, Homer E. Watson, O. W. Patrick, James T. Oman, Fred R. Walker, Roscoe C.

McGuire, Elias James Watkins, Plaintiffs,

v.

The CELOTEX CORPORATION, successor by merger with Panacon Corporation, which was successor by merger of Briggs Manufacturing Company and Philip Carey Corporation; Eagle Picher Industries, Inc., an Ohio Corporation, Appellants,

and

JOHNS-MANVILLE CORPORATION and Johns-Manville Sales Corporation, successor by merger with Johns-Manville Products Corporation; Raybestos-Manhatten Corporation, a Connecticut Corporation, Owens-Corning Fiberglas Corporation, successor by purchase of Kaylo Division of Owens-Illinois Glass Company; Pittsburgh Corning Corporation, a Pennsylvania Corporation; Unarco Industries, Inc., formerly known as Union Asbestos and Rubber Company; H. K. Porter Thermoid Division, a Delaware Corporation; Southern Asbestos Company, a Foreign Corporation, Defendants and Third Party Plaintiffs,

v.

NEWPORT NEWS SHIPBUILDING AND DRYDOCK COMPANY, Appellee,

and

The United States of America, Third Party Defendant.

Nos. 80–1116 to 80–1118.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 11, 1980.

Decided Oct. 5, 1981.

C. Michael Montgomery, Norfolk, Va. (Robert M. Hughes, III, Glen A. Huff, Steven G. Schwartz, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for Johns-Manville Corp. and Johns-Manville Sales Corp.

Gerard E. W. Voyer, Taylor, Walker & Adams, Norfolk, Va., on brief for Unarco Industries, Inc.

William V. Hoyle, Charles A. Smith, Hoyle Corbett, Hubbard, Smith & Payne, Newport News, Va., on brief for Raybestos-Manhatten, Inc.

Jack E. Greer, J. Anderson Stalnaker, Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief for Owens-Corning Fiberglas Corp.

Allan S. Reynolds, Worth D. Banner, White, Reynolds, Smith & Winters, Norfolk, Va., on brief for Pittsburgh Corning Corp.

John Y. Pearson, Jr., Bruce T. Bishop, Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., on brief for Celotex Corp.

Archibald Wallace, III, Nathan H. Smith, Albert D. Bugg, Jr., Sands, Anderson, Marks & Miller, Richmond, Va., on brief for H. K. Porter Co.

William B. Eley, Kenneth A. Phillips, Eley, Rutherford & Leafe, Norfolk, Va., on brief for Eagle-Picher Industries, Inc.

Stephen B. Clarkson, Washington, D. C. (Sullivan & Beauregard, J. Mitchell Brown, D. Whitney Thornton, II, Richard H. Saltsman, Washington, D. C., Antje E. Huck, Shannon T. Mason, Mason, Mason, Gibson, Cowardin & Spencer, Newport News, Va., on brief), for appellee.

Before WIDENER, HALL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Johns-Manville and seven other manufacturers (manufacturers), sued by five persons who claimed that they had contracted asbestosis by working with products of whose hazards they had not been warned by these manufacturers, impleaded as third-party defendant the injured persons' employer, Newport News Shipbuilding & Drydock Company (Newport News) on a third-party claim for indemnification in respect of any liability established against the manufacturers. The district court, 482 F.Supp. 1060, dismissed the manufacturers' indemnity claims, rejecting as a matter of law the several legal theories advanced in their support. We affirm.

## I

Newport News is a shipbuilding and repair facility located in Newport News, Virginia, where some of the largest and most sophisticated ships in the United States Navy are constructed and repaired. In the course of construction or repair of ships its employees install or replace thermal insulation materials containing asbestos. These insulation materials produced and sold by the manufacturers and used by Newport News on pipes, steam systems and boilers to protect the crew from the extreme heat produced by the ship's propulsion systems, take the form of rope, cloth, sheets, blocks, sections or cement. In some instances it is necessary to cut, saw, hammer or mix the material in order to install it for insulation purposes. In the event that the insulation must be removed for replacement or for the repair of other components, it is removed by ripping it out, or by some other method. In both application and "ripout" a fine dust containing microscopic particles of asbestos is frequently created. Inhalation of asbestos dust over a long period of time allegedly causes asbestosis and other lung ailments.

The plaintiffs in the main action here, all employees of Newport News, claimed that they developed asbestosis as a result of the manufacturers' failure to warn them of the hazards associated with the installation of asbestos. As a result of their asbestosis—a disabling condition resulting in part from the build-up of scar tissue in the lungs—these employees filed workmen's compensation claims with Newport News under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). 33 U.S.C. § 901 et seq. The claims of all were upheld and each employee received and presumably may still be receiving compensation payments pursuant to the Act.

When these employees then sued the manufacturers as third-party tortfeasors under § 33 of the LHWCA, 33 U.S.C. § 933, the manufacturers filed against Newport News the third-party claims for indemnity here in issue. As pleaded in an amended third-party complaint, their claims were based on two contractual theories—that Newport News as a sophisticated industrial purchaser and user of asbestos impliedly warranted to the manufacturers (in its purchase contracts) that it would use due care in the handling and use of the asbestos products, and that the manufacturers were third party beneficiaries of the employment contracts between Newport News and its employees (with an implied warranty to provide a safe work place); and on a non-contractual theory—that any negligence of the manufacturers was passive and secondary and that the negligence of Newport News in not warning its employees was active and primary.

Prior to trial, Newport News filed a motion to dismiss or for summary judgment in respect of the manufacturers' amended claims for indemnity, essentially contending that as a matter of law they were unsupportable on any of the legal theories advanced. The trial judge withheld consideration of the motion prior to trial but granted it at the conclusion of the plaintiffs' evidence on the main claim. The court rejected both theories of contractual indemnity, applying Virginia law in holding that there was no right to indemnity arising either from an implied warranty by New-

port News to use due care in the handling and use of the product, or to provide a safe place to work as to which the manufacturers were third party beneficiaries of the employment contracts. The court also rejected the noncontractual indemnity theory, holding that the exclusivity provision of the LHWCA, 33 U.S.C. § 905(a), bars any noncontractual indemnity from the employer to a third party.

On appeal the manufacturers challenge the district court's rejection of their implied warranty theory and their noncontractual theory of indemnity, but do not challenge rejection of their third party beneficiary theory. Specifically they contend that the exclusivity provision of the LHWCA does not bar their noncontractual claim and that neither it nor their contractual theory of implied warranty was properly subject to dismissal by summary judgment.

For reasons that follow, we hold that the district court properly found the contractual indemnity claim to be without merit as a matter of law. As for the noncontractual claim, we find it unnecessary to determine whether—as the district court held—it is barred by the exclusivity provision of the LHWCA. We hold instead that, assuming it were not so barred, under applicable principles of indemnity the manufacturers would not as a matter of law be entitled to indemnity on any of the legal theories advanced in its support were they to be found liable on the main claims.

## II

■ Initially, we consider whether the indemnity claims are controlled by maritime law to be applied under admiralty jurisdiction, or by state law to be applied under diversity or pendent jurisdiction. The contractual basis on which the manufacturers claim indemnity—an implied warranty arising from the purchase contracts to use due care in the use of the asbestos purchased—is clearly non-maritime. Virginia law thus controls in assessing this contractual claim. *See Avondale Shipyards, Inc. v. The Vessel Thomas E. Cuffe*, 434 F.Supp. 920, 927 (E.D.La.1977).

The noncontractual tort indemnity claim is a different matter. Any noncontractual right to indemnity in respect of established tort liability arises out of the tortious conduct upon which the indemnitee's liability was established. Such a noncontractual indemnity claim is not based on any preexisting relationship between indemnitor and indemnitee independent of the injuries for which recovery is sought. It arises rather from an equitable assessment of the fault of each in relation to the wrong done. Leflar, *Contribution and Indemnity Between Tortfeasors*, 81 U.Pa.L.Rev. 130, 146–47 (1932). *See generally Restatement of Restitution* §§ 76, 89–98 (1937).

■ This court has now determined that the main claims from which the noncontractual indemnity claim are derived are maritime tort claims to be adjudicated under federal admiralty jurisdiction. *White v. Johns-Manville Corp.*, 662 F.2d 234 (4th Cir. 1981). A noncontractual indemnity claim arising therefrom is similarly a maritime claim, *see Tri-State Oil Tools Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178, 186 (5th Cir. 1969), to be assessed under principles of maritime law.

We now address each of these claims under the principles applicable to its resolution.

## III

The manufacturers' contractual claim for indemnity is alleged by them to arise from an implied warranty running back to them from the purchasers of their products. They argue that the injuries alleged by the employees resulted from hazardous occupational exposure to and unsafe use of their products. Because of the purchaser/employer's control over the workplace and direct access to employees, they assert that as manufacturers they had to exercise through Newport News any duty they might have owed the employees and were entitled to rely on Newport News to exercise care in protecting its employees from harm. Newport News therefore owed the manufacturers an implied obligation or warranty to

exercise due care to protect its employees from harm. In breaching this duty Newport News thereby became obligated to indemnify the manufacturer for any liability they might have to Newport News' employees.

■ Applying Virginia common and statutory law, the district court properly found this claim to be without merit. This "reverse warranty" theory distorts the concept of implied warranty "out of all relation to reality." 2A A. Larson, *The Law of Workmen's Compensation* § 76.44, at 14–402. There is no express warranty here, and no such warranty arises under the Virginia sales statute, see Va.Code §§ 8.2–314, –315, or simply from a vendor-vendee relationship. *Jennings v. Franz Torwegge Machine Works,* 347 F.Supp. 1288, 1289 (W.D.Va. 1972), see *Santisteven v. Dow Chemical Co.,* 506 F.2d 1216, 1219 (9th Cir. 1974) (manufacturer's argument that purchaser had independent duty to avoid subjecting manufacturer to the risk of tort liability "turns indemnity on its head"). Further, the manufacturers do not allege facts showing that there was any unique relationship with Newport News that could support such a claim. *See Roy v. Star Chopper Co.,* 442 F.Supp. 1010, 1020–22 (D.R.I.1977), aff'd, 584 F.2d 1124 (1st Cir. 1978) (relationship more in the nature of co-manufacturers). The district court's disposition of this claim was therefore correct.

## IV

Turning to the noncontractual claim for indemnity, we have first to deal with Newport News' contention—accepted by the district court—that the claim was barred as a matter of law by the exclusivity provision of the LHWCA, 33 U.S.C. § 905. That section provides in pertinent part:

§ 905. Exclusiveness of liability

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover

damages from such employer at law or in admiralty on account of such injury or death . . . .

On appeal the manufacturers contend that application of this provision to bar their claim is foreclosed by this court's decision in *Wallenius Bremen G.m.b.H. v. United States,* 409 F.2d 994 (4th Cir. 1969). In that case, construing a practically identical exclusivity provision in the Federal Employees' Compensation Act (FECA), 5 U.S.C. § 8116(c), we held that it did not bar the type noncontractual claim for indemnity asserted by the indemnitee there and by the manufacturers here. The manufacturers predictably contend on this appeal that *Bremen* controls here, since it construed identical language in a comparable, albeit different, statutory compensation scheme. As predictably, Newport News contends that *Bremen* should be given no such precedential effect, pointing out that it deals with a different statutory scheme; that it is in conflict with the construction uniformly given the provisions by other circuits and by commentators, see, e. g., *Adams v. General Dynamics Corp.,* 535 F.2d 489 (9th Cir. 1976); *Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir. 1975); *Travelers Insurance Co. v. United States,* 493 F.2d 881 (3d Cir. 1974); 2A Larson, supra, § 76.10, at 14–292 to –295; and that in any event its application to the LHWCA exclusivity provision is precluded by Supreme Court decisions and congressional enactments pertaining specifically to the LHWCA but not to the FECA. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974) (reaffirming *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952)). *See generally* Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No.92–576, § 18, 86 Stat. 1251 (1972); H.Rep.No.92–1441, 92d Cong., 2d Sess., reprinted in [1972] U.S.Code Cong. & Ad.News 4698, 4702–04. As indicated, the district court accepted Newport News' contentions on this point, holding *Bremen* inapposite and construing § 905 as an absolute bar to the manufacturers' noncontractual claim for indemnity.

As also indicated, we reserve decision upon the question of *Bremen*'s applicability to the construction of § 905, and hold that, in any event, the noncontractual indemnity claim advanced by the manufacturers is without merit under the most favorable possible interpretation of its underlying factual and legal theories as advanced by the manufacturers. Our reasons are as follows.

■ The claims of the plaintiffs against the manufacturers in the main action are based upon theories of negligence, breach of implied warranty and strict liability. By their third-party action for indemnity the manufacturers seek conditionally—if they are held liable—to transfer the ultimate liability to Newport News on the theory that Newport News was actively negligent and thus primarily liable, while they were only passively negligent or otherwise at fault and thus secondarily liable in respect of the injuries allegedly sustained by plaintiffs. This theory of indemnity—that the indemnitor is guilty of active, primary or original fault while the indemnitee is guilty only of passive, secondary or implied fault—is recognized in admiralty. *See, e. g., Tri-State Oil Tool Industries, Inc. v. Delta Marine Drilling Co.*, 410 F.2d 178 (5th Cir. 1969). It applies a restitutionary principle to the situation where one person discharges a liability that has been imposed on him by operation of law, but which—because of another's "primary" fault—should have been discharged by the other. *See Restatement of Restitution* § 76 (1937).

■ The distinction between primary and secondary liability for this purpose is not based on a mere difference in *degrees* of fault but rather on a "difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person." *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951). Where the indemnitee's liability is merely constructive, vicarious or derivative, the burden for the entire loss may be shifted to the indemnitor whose actual fault caused the injury. *Danny's Construction Co. v. Havens Steel Co.*, 437 F.Supp. 91, 93

(D.Neb.1977); *see Restatement of Restitution* §§ 94, 95, 96 (1937).

■ The fact patterns that generally give rise to the right of indemnification here claimed include most typically those in which the indemnitee has been held absolutely liable for the wrongful acts of another—as through respondeat superior, the bailor/bailee relationship, or ownership of property where injury resulted from a dangerous condition created by a third person. *See Restatement of Restitution* §§ 94, 95, 96 (1937). This pattern has arisen in the admiralty context where a shipowner held liable on an unseaworthiness claim is awarded indemnity against a third party whose negligence caused the unsafe condition resulting in injury to a seaman. *See, e. g., Simpson Timber Co. v. Parks*, 390 F.2d 353 (9th Cir. 1968). Similarly, indemnity may be awarded where the indemnitee was induced to act by an actual misrepresentation of the indemnitor on which he relied or where the indemnitee acted pursuant to directions of the indemnitor which he reasonably believed to be lawful. *See, e. g., Radcliffe v. Hilton Inn*, 119 Ariz. 306, 580 P.2d 767, 768–69 (1978) (citing Restatement of Restitution § 90 (1937)). Additionally, it may be allowed where the indemnitee has without fault or only through passive negligence failed to discover a dangerous condition in land or buildings or a defect in products created or supplied by the indemnitor. *See, e. g., Hudson Waterways Corp. v. Coastal Marine Service, Inc.*, 436 F.Supp. 597 (E.D.Tex.1977). *See generally Restatement (Second) of Torts* § 886B (1979); Leflar, *supra*, at 146–159.

■ The manufacturers' allegations in their claim for indemnity simply do not invoke—except perhaps in conclusory legal terms which may properly be disregarded—any of these theories of indemnification based upon "primary" as opposed to "secondary" fault that have evolved in restitutionary law as applied in admiralty. If the manufacturers are found liable on the main claim it will be because the trier of fact has determined that the tortious conduct charged to them by the plaintiffs has proxi-

mately caused compensable injuries. Whether in that process they are adjudged to have breached a duty to warn or an implied warranty, or whether they are held strictly liable, they would not then—under any conceivable circumstances—be able to characterize their resulting liability as being based upon technical, passive or secondary fault in relation to the fault they charge to Newport News in their third party complaint.

To the extent their allegations might be read to charge Newport News with fault concurring with that charged to them by plaintiffs—and so they might be read—they have not invoked a right to be fully indemnified. See Gordon H. Mooney, Ltd. v. Farrell Lines, Inc., 616 F.2d 619 (2d Cir. 1980) (ocean carrier denied indemnity from inland carrier because ocean carrier's negligence contributed to the injury); Watz v. Zapata Off-Shore Co., 431 F.2d 100 (5th Cir. 1970) (no indemnity because parties were joint tortfeasors); Avondale Shipyards, Inc. v. The Vessel Thomas E. Cuffe, 434 F.Supp. 920 (E.D.La.1977) (summary judgment against party seeking indemnity granted because its liability neither technical nor vicarious). But cf. Hudson Waterways Corp. v. Coastal Marine Service, Inc., 436 F.Supp. 597 (E.D.Tex.1977) (indemnity allowed because indemnitee's only negligence was in failing to object to unsafe ramp and request a safer one).

Similarly, to the extent the indemnity allegations might be read to charge Newport News' fault as an intervening or superseding cause in relation to any conduct of the manufacturers for which liability might be found—as well they might—they have not invoked a right to indemnity but an absolute defense to the main claims. See generally Restatement (Second) of Torts §§ 440–442 (1965). This seems the unmistakable thrust of the manufacturers' arguments on appeal that Newport News as the employer and a sophisticated industrial user of asbestos products owed and breached a nondelegable duty to the employees to provide a safe place to work and therefore had the primary duty to warn them of the dangers of asbestos. This fails to concede—

indeed it negates by denying legal causation—the predicate for indemnity that some form of "secondary" liability will have been established against the party seeking indemnity. See Danny's Construction Co. v. Havens Steel Co., 437 F.Supp. 91, 94 (D.Neb.1977).

In summary, given the fact that the only fault charged to the manufacturers on the main claims—hence the only basis upon which their liability to the plaintiffs may be established—is "active" fault, an essential predicate to their right to indemnification is necessarily missing from their attempted statement of claims. If found liable on the main claims, their liability based upon the active fault charged to them in those claims cannot—under applicable principles of tort and restitutionary law applied in admiralty to maritime claims—be considered "secondary" to any liability of Newport News that would arise (were it exposed to any tort liability) from the fault charged to it in the manufacturers' third-party claim. See Guarnieri v. Kewanee-Ross Corp., 270 F.2d 575, 578–79 (2d Cir. 1959); Viens v. Anthony Co., 282 F.Supp. 983, 987 (D.Vt.1968).

■ The legal and factual theories invoked by the manufacturers might give rise—were they established—to a right to contribution from a joint tortfeasor whose fault concurred as a proximate cause of the plaintiff's injuries, or to exoneration from any liability on the basis that the other's active fault intervened as a superseding cause of those injuries, but they do not give rise to a right to indemnity from that other tortfeasor. Here, it is conceded that contribution does not lie against Newport News under the LHWCA. See Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). A superseding cause defense may of course be asserted by the manufacturers in defending against the main claims but it does not support their conditional claim for indemnity.

V

Finding no merit, as a matter of law, in any of the manufacturers' claims for indem-

nity, we affirm the district court's grant of summary judgment in favor of Newport News.

*AFFIRMED.*